**CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and Daniel J. Shannon, Plaintiffs,**

v.

**HITCHINGS TRUCKING, INC., a Michigan Corporation, and Fred Hitchings, Jointly and Severally, Defendants.**

Civ. A. No. 7–71951.

United States District Court,
E. D. Michigan, S. D.

June 24, 1980.

Robert J. Lenihan, II, Birmingham, Mich., for plaintiffs.

Lewis R. Thumm, Canyock & Thumm, Utica, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is an action by a pension fund against an employer to recover contributions claimed to be due on behalf of employees. In signing the collective bargaining agreements, defendant employer contracted to make certain pension contributions to the plaintiff fund. This dispute involves the relationship between the parties from December 1973 through April 1980. Following a trial, this court held that the defendant was generally liable for payments over this period. 472 F.Supp. 1243 (E.D.Mich.1979). At that time, the court directed the parties to attempt to determine and agree upon the amount of the outstanding liability.

The parties were unable to agree upon the amount of the liability and have asked the court for further guidance. The present disputes involve three separate areas: contributions on behalf of employees for whom the defendant was billed by the plaintiff, but who in fact had not worked during the billing period; interest on unpaid contributions; and attorney's fees. In the first of these areas, the parties have agreed that if the court determines that the plaintiff is entitled to recover all of the contributions billed to the defendant, the principal amount of such liability would be $15,766.50. The parties have also agreed that if the court holds that the defendant is liable only for those contributions which correspond to employees who in fact worked, the principal amount would be $5,190.50.

It is the position of the plaintiff fund that since the defendant failed to notify the fund that the bills included non-working employees (on lay-off or sick leave status) and since the fund has made certain financial decisions based upon its version of accounts such as that of the defendant, the actuarial soundness of the fund would be threatened by a lessening of the amounts due from the defendant.

Plaintiff bases its position on what it deems is an analogous provision of ERISA 29 U.S.C. § 1103(c). Part of that section provides that an employer which pays more to a fund than it is compelled by law and contract to pay may recover such an overpayment only if (1) the overpayment was the result of a mistake of fact (as opposed to a mistake of law) and (2) the mistake is pointed out to the fund within one year of the payment.

It is undisputed that had this defendant paid the bills sent by the plaintiff even though they included charges for nonworking employees, defendant would not be able to recover such overpayments except to the

extent that the two conditions listed above might be met. Under no circumstances could the defendant recover payments made more than one year prior to its recognition of the mistake. Plaintiff asserts that, by analogy, to the extent that the defendant could not obtain a refund of overpayments, it should not be permitted to receive what plaintiff calls a "credit" on its account as compiled by the plaintiff. Plaintiff argues that such a result would give to employers an inducement to withhold contributions until ordered by a court to pay them.

Plaintiff also seems to argue that an asset is an asset whether it is cash or an account receivable, and that plaintiff should be able to treat all of its assets equally. Using this reasoning, plaintiff treats overpayments which would be subject to the strict rule of 20 U.S.C. § 1103(c) in the same manner that it treats nonpayments such as those alleged here. Plaintiff's argument is that since Congress meant for it to be able to keep the overpayments in order to maintain its actuarial soundness, Congress, for the same reason, must have meant for it to be able to keep its other assets.

This court finds plaintiff's position totally without merit. 29 U.S.C. § 1103(c) has absolutely nothing to do with the situation at bar. While it may be true that as a result of plaintiff's accounting procedures, it has treated the nonpayments of the defendant as it would have treated overpayments, no sufficient justification for forcing the defendant to make contributions which he did not contract to make has been put forth.

■ It is the opinion of the court that the plaintiff is using its concern over its own actuarial soundness as an affirmative weapon to recover sums not owed to it. Congress did not provide for this and this court will not permit it. The court believes that the injuries which plaintiff complains of are of its own doing and may be easily avoided in the future.

First of all, to the extent that plaintiff, because of the defendant's failure to promptly report the status of its employees, has overstated its own assets, it has also overstated its liabilities to the employees

for whom it thought contributions were due. To the extent that the court determines that such contributions were not due, the corresponding rights that those employees would have had against the fund would also evaporate. Assuming that the fund has acted reasonably, it should be neither injured nor benefited by this ruling.

As for plaintiff's argument that it will be injured because it has made certain decisions based upon its having a certain asset balance, the court has found that the plaintiff was incorrect in its assumption that all of the accounts would eventually be paid, and plaintiff may not recover from damages brought on by its own mistake.

In answer to the plaintiff's claim that a ruling for the defendant would induce other employees not to make payments until forced by a court to do so, it should be noted that the plaintiff has a number of ways to avoid such a situation. First of all, 29 U.S.C. § 1132(g) provides that the court may make an award of attorney's fees in this sort of case. Second, and perhaps most useful, plaintiff is free to put into its agreements with employers rules and regulations which would obviate this problem.

The gist of the defendant's position on this issue is that it simply did not contract to make contributions for employees who were not working. This court will not lightly impose any such duty. Plaintiff's attempted analogy is unconvincing and its fears are unreasonable. Defendant is liable in principle for only those contributions which relate to workers who did in fact work. By stipulation of the parties, that amount, for the period up through April 1980, is $5,190.50. That amount must be paid to plaintiff.

■ Next, the court must consider the question of how much, if any, interest should be paid along with the principal payment discussed above. Defendant argues that because it offered to settle this case some time ago for what it believed was a reasonable sum, it should not be liable for interest after that offer. This argument shows that defendant fails to understand

the function of an interest award. Interest is not a penalty and a court should not consider the good faith or bad faith of the parties in deciding whether to award interest or what amount to award. Interest is awarded simply because a party who has had possession and use of a certain sum of money for a certain period of time is determined not to have been entitled to that possession and use. The interest award is no more than compensation for the lost use of the principal sum for the time period that the money was not in the possession of the proper party. *Employer-Teamsters v. Weatherall Concrete*, 468 F.Supp. 1167 (S.D. W.Va.1979).

■ Since the parties have agreed, by contract, that interest on past due payments is to be calculated at 8% per year for periods prior to January 1, 1980, and at 9% per year after that time, the court will award that amount of interest in this case. The parties are directed to determine the exact dollar figure involved.

■ Finally, the court must consider the question of attorney's fees. 29 U.S.C. § 1132(g) states that "In any action under this subchapter . . . , the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." This is unlike the attorney's fee provision of federal civil rights laws in that there is no requirement that the award go only to a "prevailing party." 42 U.S.C. § 1988. 42 U.S.C. § 1988 provides in part that "The court in its discretion, may allow the prevailing party . . . [in a civil rights action] a reasonable attorney's fee as part of the costs." The court has substantial discretion in making awards in ERISA cases.

There are two separate questions that the court must consider in this context: first, will any attorney's fees be awarded at all; and second, if the answer to the first question is yes, in what amount will the award by made? This court is of the belief that despite the difference in wording between 42 U.S.C. § 1988 and 29 U.S.C. § 1132(g), the key to the exercise of the discretion given to the judge by ERISA is the merit in

the position taken by a party. That in turn is reflected in the outcome of the case. As a general rule, then, a reasonable attorney's fee should be awarded to parties who prevail in ERISA actions.

There is authority to the effect that a court should not award attorney's fees under ERISA without first considering (1) the degree of the offending party's culpability; (2) the ability of the offending party to satisfy such an award; (3) whether such an award against the offending party would deter other persons acting under similar circumstances; and (4) the relative merits of the parties' positions. *Baeten v. Van Ess*, 474 F.Supp. 1324 (E.D.Wis.1979). Those factors were taken from an earlier case which involved more than an ERISA claim, and it is difficult to determine the relationship of ERISA to each of these factors. *Eaves v. Penn*, 587 F.2d 453 (10th Cir. 1978). While this court agrees that a judge must keep an open mind to particular factors that may justify a departure from the general rule in a specific case, it is of the belief that to attempt to make the general rule anymore specific than to award fees to prevailing parties unless the particulars of the case would render such an award unjust would add needless strictures to what should be an easily applied rule.

Most of the courts which have been confronted with 29 U.S.C. § 1132(g) seem to have agreed that a prevailing party is generally entitled to attorney's fees as a matter of course. *Fase v. Seafarers Welfare and Pension Plan*, 589 F.2d 112 (2d Cir. 1978); *Huge v. Reid*, 468 F.Supp. 1024 (N.D.Ala. 1979); *Huge v. Maximeadows Mining Co.*, 459 F.Supp. 267 (N.D.Ala.1978); *Carter v. Montgomery Ward & Co.*, 76 F.R.D. 565 (E.D.Tenn.1976).

In this particular case, there have been two major phases. First, the court held a trial on the question of the defendant's liability for contributions during a period of collective bargaining. On that issue, plaintiff prevailed. Most recently, the court held a hearing which centered around the defendant's liability for contributions on behalf of employees who had not in fact

worked. The defendant has prevailed on this issue.

In order to accomplish a just result without burdening the parties with additional hearings, the court will award to plaintiff its reasonable attorney's fees for the prosecution of the initial issue through trial, but at the same time, it will award to defendant its reasonable attorney's fees for defending against the plaintiff's recent request for entry of judgment.

These awards must be made in accordance with the factors discussed by the United States Court of Appeals for the Sixth Circuit in the recent case of *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (1979). The court finds, in accordance with the evidence presented, that $10,595.50 is a reasonable fee for the above described services of plaintiff's attorneys. The court hereby awards that amount to the plaintiff. The court has no evidence from which to ascertain a reasonable fee for the above described efforts of defendant's attorney. The award that it makes to defendant should reflect all of the efforts expended by defendant's attorney in preparation for and attendance at the June 5, 1980 hearing. The court is aware that of the three issues presented at the hearings (contributions for those who did not work, interest, and attorney's fees), defendant has fully prevailed on only one. However, it is the belief of the court that that issue—defendant's liability for contributions on behalf of persons who did not in fact work—was the major stumbling block between the parties, and that if that issue had been resolved, the other issues could have been avoided by the parties. For this reason, the court believes that justice requires an award to defendant of its reasonable attorney's fees for all of the time spent in connection with all aspects of the June 5, 1980 hearing.

The parties are directed to meet in an attempt to agree upon the exact amounts due under this ruling. Should the parties be unable to agree, each should make a written submission of its position to the court which will then make the final calculations.

It is so ordered.