RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0248p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

SUSAN CARD,

*Plaintiff-Appellant*,

*v.*

No. 20-6217

PRINCIPAL LIFE INSURANCE COMPANY,

*Defendant-Appellee*.

─────────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:15-cv-00139—Karen K. Caldwell, District Judge.

Argued: October 21, 2021

Decided and Filed: November 2, 2021

Before: McKEAGUE, NALBANDIAN, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Andrew M. Grabhorn, GRABHORN LAW | INSURED RIGHTS®, Louisville, Kentucky, for Appellant. Edna S. Kersting, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP, Chicago, Illinois, for Appellee. **ON BRIEF:** Andrew M. Grabhorn, Michael D. Grabhorn, GRABHORN LAW | INSURED RIGHTS®, Louisville, Kentucky, for Appellant. Edna S. Kersting, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP, Chicago, Illinois, for Appellee.

The court delivered a PER CURIAM opinion. MURPHY, J. (pp. 9–13), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

PER CURIAM.  This case under the Employee Retirement Income Security Act (ERISA) reaches our court for a second time.  On Susan Card's first appeal, we found that the administrator of her disability plan arbitrarily denied her benefits, so we ordered a remand to the plan administrator for it to take a second look at her claims.  *See Card v. Principal Life Ins. Co.*, 790 F. App'x 730, 732 (6th Cir. 2019).  When Card filed various motions in the district court after this remand, the district court held that it lacked jurisdiction because we had bypassed the court and remanded Card's case directly to the administrator.  Card now appeals this jurisdictional ruling.  The ruling requires us to address how "remands" to plan administrators should work.  Because a district court retains jurisdiction over a beneficiary's ERISA suit during the remand, we vacate the court's order holding that it lacked jurisdiction and remand for it to consider Card's motions.

I

In February 2013, a doctor diagnosed Card with "chronic lymphocytic leukemia," a slow-growing blood cancer that can cause fatigue.  *See id.* at 732 & n.1.  By the following December, Card alleges, her worsening fatigue left her unable to perform her job as a night-shift nurse at a long-term care and skilled rehabilitation center.  *Id.* at 732–33.  She applied for disability benefits under an ERISA-governed plan administered by Principal Life Insurance Company.  *Id.* at 733.  Principal Life denied her requests for short-term, long-term, and total disability benefits on the ground that she did not fall within the plan's various "disability" definitions.  *Id.* at 733–34.

Card sued Principal Life seeking these benefits under ERISA.  The district court granted summary judgment to Principal Life.  *Id.* at 734.  We reversed.  The plan delegated discretionary claims-processing authority to Principal Life, so we reviewed its denial of benefits under the deferential arbitrary-and-capricious test.  *See id.* at 734–36.  But we held that Principal Life's denial failed this test.  *Id.* at 737–43.  The plan's definition of short-term disability turned on

whether beneficiaries could perform the essential tasks of their specific jobs; its definition of long-term disability turned on whether beneficiaries could perform the essential tasks of their general occupations. *Id.* at 737–39. We reasoned that Principal Life had not analyzed whether Card's cancer prevented her from performing the tasks of her job or occupation. *Id.* at 738–42.

Turning to the remedy, we recognized a choice between remanding to the administrator for a second decision or granting benefits outright. *Id.* at 742 n.7. Because we had identified only procedural problems with Principal Life's denial without resolving Card's ultimate eligibility for benefits, we opted for a remand. *Id.* at 742. Our conclusion noted: "We therefore remand the case to Principal Life for further proceedings consistent with this opinion." *Id.* at 743.

After we issued our mandate, Principal Life quickly granted Card short-term disability benefits but requested additional information for her claims seeking long-term and total disability benefits. Card then filed two motions in the district court. She first sought attorney's fees. She next asked the court to reopen the case because Principal Life had not reached a benefits decision for her other claims within the 45 days allegedly required by ERISA regulations.

The district court did not resolve these motions on their merits. Rather, it issued a "virtual order" on its docket that denied the motions for lack of jurisdiction. Its order indicated: "This matter was remanded . . . by the Sixth Circuit to Principal Life Insurance Company for further consideration . . . of Card's claims. The matter is not before this Court, which is without jurisdiction to consider it." Order, R.103.

II

Card filed a timely notice of appeal from this order. But Principal Life claims that the district court's jurisdictional ruling did not qualify as a final decision appealable to this court under 28 U.S.C. § 1291. It is mistaken. Section 1291 provides: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . , except where a direct review may be had in the Supreme Court." *Id.* The Supreme Court often notes that the key statutory phrase "final decision" reaches any order that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Hall v.*

*Hall*, 138 S. Ct. 1118, 1124 (2018) (citation omitted). So the classic "final decision" comes in the form of a with-prejudice judgment ruling that the plaintiff has won or lost on the merits of all claims against all defendants. *See id.*; *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009).

But appealable orders do not always take that shape. District courts often dismiss a suit on procedural grounds—say, for lack of venue or personal jurisdiction—without prejudice to the plaintiff's ability to refile the suit elsewhere. As long as these without-prejudice dismissals leave nothing for the district court to do in the specific case, courts usually treat them as "final" and so appealable under § 1291. *See Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 590 (2020); *Zayed v. United States*, 368 F.3d 902, 904–05 (6th Cir. 2004); *Union Oil Co. of Cal. v. Serv. Oil Co., Inc.*, 766 F.2d 224, 227–28 (6th Cir. 1985); *see also* 15A Charles A. Wright et al., *Federal Practice and Procedure* § 3914.6, at 533–35 & 533 n.18 (2d ed. 1992 & Supp. 2021).

This same logic gives a circuit court jurisdiction to review a district court's dismissal for lack of subject-matter jurisdiction. *See, e.g.*, *Lam v. United States*, 979 F.3d 665, 670 (9th Cir. 2020); *Kowalski v. Boliker*, 893 F.3d 987, 994–95 (7th Cir. 2018); *16 Front Street, L.L.C. v. Miss. Silicon, L.L.C.*, 886 F.3d 549, 561 (5th Cir. 2018); *Davis v. Wells Fargo*, 824 F.3d 333, 341 n.5, 346 (3d Cir. 2016); *Blitz v. Napolitano*, 700 F.3d 733, 738 (4th Cir. 2012). Our court, for example, routinely reviews dismissals of suits for lack of jurisdiction after a district court finds that a plaintiff lacks Article III standing. *See, e.g.*, *Gerber v. Herskovitz*, 14 F.4th 500, 505–08 (6th Cir. 2021). Although a plaintiff may be able to file a similar suit later in a court with jurisdiction (hence, why the dismissal is without prejudice), the dismissal is final because "the district court has finished with the case." *Blitz*, 700 F.3d at 738 (citation omitted).

This framework shows that we have jurisdiction over Card's appeal under § 1291. The district court's order ruled that it lacked subject-matter jurisdiction over Card's motions (and this suit) because this court's prior decision had remanded the case to the plan administrator rather than the court. This reasoning leaves no doubt that the court "was finished with this case" because it thought it lacked jurisdiction. *Kowalski*, 893 F.3d at 994. Even if Card could have filed another suit to challenge Principal Life's new benefits decision (or its allegedly undue delay

in making it), the district court's order was still appealable because the court made clear that Card could not do anything else in this specific case. *See Union Oil*, 766 F.2d at 227–28.

Principal Life responds with the broad claim that dismissals for lack of subject-matter jurisdiction are not appealable. But the sole decision it cites—*Thackeray v. Boats Express Corp.*, 1999 WL 644163 (6th Cir. Aug. 16, 1999) (order)—was a case that the defendant had removed from state court to federal court. *Id.* at *1. When a district court remands a suit to state court on the ground that it lacks jurisdiction, a specific statute indicates that such an order "is not reviewable on appeal or otherwise[.]" 28 U.S.C. § 1447(d). This statute does not apply here.

III

With our appellate jurisdiction secure, we turn to the district court's subject-matter jurisdiction. When administrators deny benefits claims under ERISA-governed welfare plans, beneficiaries often sue to recover the benefits using a federal cause of action. 29 U.S.C. § 1132(a)(1)(B). District courts have subject-matter jurisdiction over these suits under ERISA (not to mention the federal-question statute). *Id.* § 1132(e)(1); 28 U.S.C. § 1331. A federal court considering such a claim starts with the presumption that it should review the administrator's denial of benefits de novo. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If, however, the terms of the plan give the administrator discretionary power to make benefits decisions, the court reviews the administrator's denial under a deferential arbitrary-and-capricious standard. *See id.*; *Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 567 (6th Cir. 2013).

When a court finds that an administrator's denial of benefits flunked even this deferential test, what should the court do next? Our answer has turned on the underlying reason for the arbitrary-and-capricious finding. *See Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621–23 (6th Cir. 2006). If the record leaves no doubt that an ERISA plan entitles a beneficiary to benefits, the court may simply award the "benefits due to him under the terms of his plan[.]" 29 U.S.C. § 1132(a)(1)(B); *see, e.g.*, *Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660, 675 & n.5 (6th Cir. 2006); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 715–16 (6th Cir. 2000).

Often times, though, a court will find an administrator's decision arbitrary and capricious for a procedural reason. The administrator might have failed to consider all the evidence or applied the wrong standard. *See, e.g.*, *Elliott*, 473 F.3d at 618–21; *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 521–22 (6th Cir. 1998). This type of error does not necessarily show that the plan entitles the beneficiary to benefits; the error shows only that the administrator's reasoning cannot stand. When an administrator makes this kind of process error, we have held that a court should "remand" the beneficiary's claims to the plan administrator for a second benefits determination. *See, e.g.*, *Williams v. Target Corp.*, 579 F. App'x 390, 392 (6th Cir. 2014) (per curiam); *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 665 (6th Cir. 2004); *Univ. Hosps. of Cleveland v. Emerson Elec. Co. Benefit Plan*, 1994 WL 714326, at *1–2 (6th Cir. Dec. 22, 1994).

A district court that orders such an ERISA remand to a plan administrator does not issue a traditional remedy (like a damages award or a permanent injunction) that ends the case and creates a final judgment. Rather, the district court retains jurisdiction over the case while the administrator reassesses its benefits decision. *See Bowers v. Sheet Metal Workers' Nat'l Pension Fund*, 365 F.3d 535, 537 (6th Cir. 2004) (citing *Petralia v. AT&T Global Info. Sols. Co.*, 114 F.3d 352, 354 (1st Cir. 1997)). As a result, if an administrator denies the claim for a second time, the beneficiary need only file a motion seeking renewed relief in the still-pending federal suit. *See id.*

Suppose, however, that a district court enters judgment for a plan administrator, and our court concludes only on appeal that the suit requires a remand to the administrator. How should the appellate court implement this remand order? We have uniformly reversed and remanded the case to the district court with instructions that the district court, in turn, remand the beneficiary's claim to the administrator. In one case, for example, we held: "The district court's judgment is VACATED and we REMAND this case to the district court with instructions that it REMAND the case to Hartford's plan administrator[.]" *Target Corp.*, 579 F. App'x at 392. We have issued similar instructions in our other cases ordering these types of remands. *See, e.g.*, *Jones*, 385 F.3d at 665–66; *Univ. Hosps.*, 1994 WL 714326, at *2. Our practice, moreover, comports with the seemingly uniform views of the other circuit courts that have ordered remands to plan

administrators on appeal. *See, e.g.*, *Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 398 (7th Cir. 2009); *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 32 (1st Cir. 2005); *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 1006 (8th Cir. 2005) (en banc); *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 951 (9th Cir. 1993) (per curiam).

This background law shows that the district court had jurisdiction over Card's motions. Admittedly, our prior panel opinion—on its face—seemed to engage in a previously unheard-of procedural innovation. At the time of Card's first appeal, this case had a procedural posture that resembled the posture of many of these other ERISA cases. Principal Life had denied Card's request for disability benefits, and she had sued in the district court under § 1132(a)(1)(B). The district court had also granted a final judgment for Principal Life and Card had appealed. *See Card*, 790 F. App'x at 732. This court then found that Principal Life had arbitrarily evaluated her claims, so our initial decision ordered a remand to the plan administrator. *See id.* So far, so good. Yet the panel phrased its "decretal language" in a way that has now sowed great confusion. *See generally* John O. Newman, *Decretal Language: Last Words of an Appellate Opinion*, 70 Brook. L. Rev. 727, 727 (2005). The panel concluded: "We therefore remand this case to Principal Life for further proceedings consistent with this opinion." *Card*, 790 F. App'x at 743. The district court read this language to suggest that we entered a "final judgment" granting Card the remedy of a remand to the plan administrator and leaving nothing else for the district court to do. Its interpretation was perhaps understandable given the phrasing.

But it was still wrong. We must interpret our prior decision in light of the procedural principles that govern in this ERISA context. As far as we can tell, no circuit court has ever ordered a remand *directly* to a plan administrator without vacating the district court's decision and keeping the case alive there. Despite the prior panel's language, moreover, we see no evidence that it meant to depart from that well-established practice. For one thing, the panel relied on this court's decision in *Elliott* when picking its remedy. *Card*, 790 F. App'x at 742 & n.7. In *Elliott*, however, the court followed the ordinary course. After finding a remand to the plan administrator appropriate, *Elliott* made clear "that a remand to the district court with instructions to remand to MetLife for a full and fair inquiry is the proper remedy here." 473 F.3d at 622. For another thing, our precedent required the district court to retain jurisdiction over

Card's suit while Principal Life made its new benefits decision. *See Bowers*, 365 F.3d at 537. These ERISA-specific background rules make clear that the district court had jurisdiction over Card's later-filed motions.

The ERISA-specific rules also comport with more general principles. When an appellate court reverses a district court and orders a particular result, the appellate court generally remands for the district court to implement that result; it does not typically implement the result itself. *See Ft. Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Nat. Res.*, 71 F.3d 1197, 1201–02 (6th Cir. 1995); 18B Charles A. Wright et al., *Federal Practice and Procedure* § 4478.3, at 698 (3d ed. 2019). This practice follows from Congress's instructions. It has told appellate courts that they have the power to reverse or vacate a decision under review and that they should then "remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106. So an appellate court generally must rely on a district court to carry its orders into effect. *Ft. Gratiot*, 71 F.3d at 1202. We have interpreted our prior opinions with this background rule in mind. When, for example, we issued an order in a first appeal that could be read to suggest that we had entirely "close[d] the case," we later clarified that we had sent the case back to the district court for further proceedings. *Id.* Although we "should have provided better direction" during the first appeal on what the district court needed to do, our inadequate language did not stop us from clarifying matters on the second appeal. *Id.* We take that same course here. As in every other ERISA case in this procedural posture, we interpret our prior decision as remanding to the district for it to retain jurisdiction while Principal Life engaged in the new benefits determination. The district court thus had jurisdiction to consider Card's motions to reopen and for attorney's fees.

We vacate the district court's order and remand for consideration of Card's motions.

––––––––––––––––––

**CONCURRENCE**

––––––––––––––––––

MURPHY, Circuit Judge, concurring.  At first glance, this ERISA case involves only a sleepy procedural issue about how courts should implement a "remand" to a plan administrator. But I find an important question lurking just below the surface: Why do courts have *any* power to "remand" a pending federal lawsuit to one of the private litigants?  That strikes me as quite an unusual thing.  Why shouldn't the district courts instead oversee any additional litigation compelled by an arbitrary-and-capricious finding using the normal rules of civil procedure?  *Cf. VanderKlok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 616–17 (6th Cir. 1992).

The circuit courts all seem to agree that a "remand" power exists.  *See Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 31 (1st Cir. 2005); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1073–74 (2d Cir. 1995); *Grossmuller v. Int'l Union, United Auto. Aerospace & Agric. Implement Workers of Am., UAW, Loc. 813*, 715 F.2d 853, 859 (3d Cir. 1983); *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1007–08 & 1007 n.4 (4th Cir. 1985); *Moller v. El Campo Aluminum Co.*, 97 F.3d 85, 88–89 & 89 n.4 (5th Cir. 1996) (per curiam); *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621–23 (6th Cir. 2006); *Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 441, 447 (7th Cir. 2019); *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 1005–06 (8th Cir. 2005) (en banc); *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460–61 (9th Cir. 1996); *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288–89 (10th Cir. 2002); *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 676 (11th Cir. 2014).  Yet the Supreme Court has not approved of this remand practice.  And the caselaw leaves me with little confidence that the Court would do so—at least not using the current justifications for it.

To be sure, remands are ubiquitous in our law.  Circuit courts routinely remand federal cases to district courts to explore issues further or carry mandates into effect.  *See, e.g.*, *United States v. Hunter*, 646 F.3d 372, 374 (6th Cir. 2011); *Ft. Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Nat. Res.*, 71 F.3d 1197, 1202 (6th Cir. 1995).  To the extent that this practice does not fall impliedly within our Article III powers, Congress has long sanctioned it.  *See* 28 U.S.C.

§ 2106; *cf. Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747–48 (6th Cir. 2019). Likewise, federal courts routinely remand cases to federal agencies within the executive branch. *See, e.g.*, *Negusie v. Holder*, 555 U.S. 511, 523–24 (2009); *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943). To the extent the Administrative Procedure Act does not expressly grant this power, perhaps the Act should be read to permit it in light of background separation-of-powers principles. *See* Christopher J. Walker, *The Ordinary Remand Rule and the Judicial Toolbox for Agency Dialogue*, 82 Geo. Wash. L. Rev. 1553, 1561–65 (2014). Specific statutes also grant courts a remand power with respect to the decisions of specific federal agencies, such as the Social Security Administration. *See* 42 U.S.C. § 405(g); *cf.* 28 U.S.C. § 2347(b)(1).

But I am aware of no other area of law in which a federal court "remands" a case to one of the two private litigants. Like Judge Easterbrook, I find it "doubtful as an original matter that a district court may 'remand' ERISA claims, as if to administrative agencies[.]" *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 978 (7th Cir. 1999).

My reasoning is simple. I see nothing in ERISA's text that grants a court the power to remand a claim to an administrator. As one court has recognized, § 1132(a)(1)(B)'s private right of action (the one at issue here) does not "explicitly" include a remand remedy. *Buffonge*, 426 F.3d at 31 n.14; *see also* Mark D. DeBofsky, *A Critical Appraisal of the Current State of ERISA Civil Procedure*, 18 Emp. Rts. & Emp. Pol'y J. 203, 233–34 (2014). And none of the other circuit decisions that I have reviewed points to any other ERISA section as the source of this remand power. This lack of textual support has particular significance under ERISA. Because § 1132 provides a detailed list of precise remedies, the Court has "been especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)).

In addition, the Supreme Court has said that courts should look to trust principles when interpreting ambiguous phrases in ERISA because the statute is teeming with terms of art from the common law of trusts. *See Firestone*, 489 U.S. at 110–11; *see also, e.g.*, *Conkright v. Frommert*, 559 U.S. 506, 514–16 (2010). Did common-law courts have any authority to issue a

"remand" to a trustee for a second determination when beneficiaries of the trust sued to recover benefits? Although I have not looked deeply into this esoteric question, a court perhaps could view a remand as analogous to an order "to compel [a] trustee to perform his duties as trustee[.]" Restatement (Second) of Trusts § 199(a) (Am. L. Inst. 1959). As one treatise suggests: "Where the trustee has made no decision, or has abused his discretion, the court may order a new decision to be made in the light of rules expounded by the court, rather than instruct him as to the specific action which he should take." George G. Bogert et al., *Bogert's The Law of Trusts and Trustees* § 560, Westlaw (database updated June 2021). In this sense, though, a remand order would resemble a traditional injunction compelling the defendant to take a concrete action. But we have never viewed remands in this light, which is why parties cannot immediately appeal them in this circuit. *See Bowers v. Sheet Metal Workers' Nat'l Pension Fund*, 365 F.3d 535, 537 (6th Cir. 2004). More fundamentally for present purposes, I have found no circuit decisions that have approved of this "remand" power by analogy to the common law of trusts.

So how, then, did this power come to be? Despite a mountain of cases approving of it, these decisions seem to rest on paper-thin reasoning. Consider our own court's experience with the remand power. Many of our cases have invoked it. *See, e.g.*, *Williams v. Target Corp.*, 579 F. App'x 390, 392 (6th Cir. 2014) (per curiam); *Daft v. Advest, Inc.*, 658 F.3d 583, 594–97 (6th Cir. 2011); *Elliott*, 473 F.3d at 621–22; *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 665 (6th Cir. 2004); *Henderson v. Ameritech Corp.*, 2001 WL 1823813, at *10 (6th Cir. Dec. 20, 2001); *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 852 (6th Cir. 2000); *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998); *Univ. Hosps. of Cleveland v. Emerson Elec. Co. Benefit Plan*, 1994 WL 714326, at *1–2 (6th Cir. Dec. 22, 1994). But our early cases largely assumed its existence without addressing the subject in detail. In perhaps our first case to order an ERISA "remand," we stated in full: "Such error should be corrected in the first instance by the [plan administrator]. *See Wolfe v. J.C. Penney Co., Inc.*, 710 F.2d 388, 394 (7th Cir. 1983)." *Univ. Hosps.*, 1994 WL 714326, at *1.

Our apparent first published decision ordering a "remand" (*Killian*) contained little more reasoning. There, a district court held that an administrator had wrongly failed to consider certain evidence and that the beneficiary was entitled to benefits when accounting for it.

152 F.3d at 519–20.  We agreed that the administrator had erred by failing to consider the evidence.  *Id.* at 521–22.  But we disagreed with the district court's decision to consider that evidence in the first instance.  We reasoned that courts generally may not rely on evidence that the administrator did not consider.  *Id.* at 522 (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990)).  We then indicated that "the solution is for the case to be remanded" to allow the administrator "to conduct a review in the first instance, considering the relevant material it originally excluded."  *Id.*  We did not cite any other authority.  Yet *Perry* held only that courts must stick to the administrative record when initially reviewing the administrator's decision; it said nothing about what should happen if a court finds that the administrator violated ERISA.  *See* 900 F.2d at 966–67.  In another case in which we did find an ERISA violation, moreover, we distinguished *Perry* and allowed the district court to consider new information in the first instance.  *See VanderKlok*, 956 F.2d at 616–17.

Many cases in our circuit and elsewhere trace this "remand" power to a pair of Seventh Circuit decisions: *Wolfe* and *Wardle v. Central States, Southeast & Southwest Areas Pension Fund*, 627 F.2d 820 (7th Cir. 1980).  *See, e.g.*, *Miller*, 72 F.3d at 1071; *Univ. Hosps.*, 1994 WL 714326, at *1; *Berry*, 761 F.2d at 1007.  *Wolfe* left no doubt about what motivated its decision: "Policy considerations favor allowing the fiduciary to decide an employee's benefit eligibility." 710 F.2d at 394.  Yet, as Judge Thapar suggested with respect to ERISA's court-created exhaustion rule, "[i]t is troubling to have no better reason for a rule of law than that the courts made it up for policy reasons."  *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 900 (6th Cir. 2020) (Thapar, J., concurring).  *Wardle*, by comparison, relied on citations to pre-ERISA caselaw interpreting pension-plan provisions in the Labor Management Relations Act.  *See* 627 F.2d at 824, 828 (citing *Sturgill v. Lewis*, 372 F.2d 400, 401 (D.C. Cir. 1966) (per curiam); *Ruth v. Lewis*, 166 F. Supp. 346, 349 (D.D.C. 1958)).  But those decisions are equally conclusory. *See, e.g.*, *Sturgill*, 372 F.2d at 401.  And the Supreme Court has now rejected reliance on the Labor Management Relations Act when interpreting ERISA.  *See Firestone*, 489 U.S. at 109–13.

In short, I tend to think that the existing caselaw has not adequately justified what seems to me to be a strange procedure—remanding a case to a private litigant for further proceedings rather than completing those proceedings in the court. And if plan administrators ultimately cannot ground this procedure in ERISA's text as interpreted against its historical context, I find it difficult to believe that the Supreme Court would sanction it. Because it is well established in this circuit, though, I concur in the majority opinion explaining how it should be implemented.